*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DAVID SALO,
*Appellant,*

*v.*

LINDA TYLER, KAVISH CHOUDHARY, and JOHN VU,
*Appellees.*

No. 20150520
Filed February 22, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Richard D. McKelvie
No. 120905443

Attorneys:

Sean N. Egan, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., Joshua D. Davidson, Asst. Att'y Gen.,
Salt Lake City, for appellees

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUDGE BROWN, and
JUDGE HYDE joined.

Having recused himself, JUSTICE PEARCE does not participate herein;
DISTRICT COURT JUDGE JENNIFER A. BROWN sat.

Due to her retirement, JUSTICE DURHAM did not participate herein;
DISTRICT COURT JUDGE NOEL S. HYDE sat.

JUSTICE PETERSEN became a member of the Court on November 17,
2017, after oral argument in this matter, and accordingly did not
participate.

Associate Chief Justice Lee, opinion of the Court:

¶ 1    In 2011 David Salo was fired from Amgen, Inc., where he worked as a pharmaceutical representative. Salo later filed claims for defamation and interference with economic relations, asserting that three administrators at the University of Utah Hospital pharmacy—Linda Tyler, Kavish Choudhary, and John Vu—defamed him and caused him to lose his job. The district court dismissed these claims on summary judgment. We affirm.

¶ 2    In so doing we first clarify the operative summary judgment standard under rule 56 of the Utah Rules of Civil Procedure. Despite some confusing dicta to the contrary in *Orvis v. Johnson*, 2008 UT 2, 177 P.3d 600, we hold that the Utah summary judgment standard is in line with the federal standard as set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In recent cases we have sought to clarify the standard as stated in *Orvis* and to reconcile it with the *Celotex* formulation. *See, e.g.*, *Jones v. Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 30 n.9, 284 P.3d 630. But confusion has continued—as evidenced by arguments in this case. And we now disavow any suggestion in *Orvis* that our Utah standard is distinct from the federal standard stated in *Celotex*. As in *Celotex*, we hold that the moving party always bears the burden of establishing the lack of a genuine issue of material fact, but the burden of production of evidence may fall on the nonmoving party (if that party will bear the burden of production at trial). And where the burden of production falls on the nonmoving party, we clarify that the moving party may carry its burden of persuasion without putting on any evidence of its own—by showing that the nonmoving party has no evidence to support an essential element of a claim.

¶ 3    We affirm summary judgment under this standard. We hold that the defendants were entitled to summary judgment under the Utah Governmental Immunity Act, Utah Code sections 63G-7-101 through 63G-7-904. That statute protects the governmental employees here from liability for acts within the scope of their employment unless their acts are shown to be willful. *See id.* § 63G-7-202(3). Here it is evident that the defendants acted within the scope of employment because they were clearly engaged in the general type of work they were employed to perform. And Salo produced no evidence that their actions were willful. We affirm on those grounds.

¶ 4    We also affirm the district court's decision to refuse to strike an affidavit submitted by Linda Tyler in support of the motion

for summary judgment filed by Choudhary and Vu. Tyler was not listed as a potential witness at the time of the summary judgment motion, as required by rule 26(a) of the Utah Rules of Civil Procedure. But Tyler was identified in the defendants' rule 26(a) disclosures at every stage of the litigation until shortly before summary judgment, as was the subject of Tyler's testimony. For that reason we conclude that Salo was in no way prejudiced by the defendants' failure to identify Tyler as a witness. And we conclude that the district court acted within its discretion in denying the motion to strike.

I

¶ 5  In 2011 David Salo was working as a pharmaceutical representative for Amgen, Inc. His largest account was with the University of Utah Hospital system. He worked particularly closely with the Huntsman Cancer Hospital. Salo was also a member of the Medical Service Representatives Committee (MSR) at the hospital. In that volunteer capacity he helped coordinate the relationship between pharmaceutical companies such as Amgen, their drug representatives, and hospital administrators and staff.

¶ 6  On April 27, 2011, a nurse at the university hospital contacted Salo about a patient who suffered from bony-metastatic disease and giant cell tumor (GCT). The nurse reached out to Salo on behalf of Dr. Lance Gouw, a physician in the University of Utah hospital system. Dr. Gouw had developed a plan to treat the patient's GCT, a plan that included the use of denosumab, a drug manufactured by Amgen. Since the U.S. Food and Drug Administration (FDA) had not approved denosumab for treatment of GCT, Dr. Gouw's nurse inquired whether Salo had any information on treating GCT with the drug. Salo had never heard of GCT before and told the nurse he would get back to her. He also directed her to Amgen Medical Information for more information. Later Dr. Gouw's physician assistant Grace Noda followed up with Salo. Salo gave Noda the contact information of a doctor from MD Anderson Cancer Center who had experience using denosumab for GCT.

¶ 7  At the same meeting, Noda asked Salo about Amgen's patient assistance programs administered through the Amgen Foundation. The patient in question did not have commercial health insurance and thus was not eligible for the First Step Program. But Salo did provide information about Amgen's other program, the Safety Net Program, designed for patients without insurance. Dr. Gouw later applied to the program on behalf of his patient.

¶ 8 Following his conversation with Noda, Salo called the hospital's pharmacy director to relate his conversations with Dr. Gouw's nurse and physician assistant, but the call dropped. Salo then called Vu and reported that he was aware that Dr. Gouw intended to use denosumab off-label but that he "had nothing to do with Dr. Gouw wanting to use [the drug] off-label." Salo also reported that he had given Noda the name of a physician who had experience using denosumab for GCT. Vu "took exception" to this news, remarking that "we're going to have to look into this."

¶ 9 Vu reported this conversation to Choudhary, writing about "perceived" off-label promotion of denosumab by Salo. Vu relayed that the "action of giving out the MD Anderson physician info would likely be considered off-label promotion." Choudhary also heard from the hospital's pharmacy director, who reported that certain hospital staff were under the impression that Salo had given Dr. Gouw Amgen's financial assistance debit cards for use for an off-label treatment. Choudhary forwarded this information to Tyler.

¶ 10 Tyler assigned Choudhary to lead the pharmacy's investigation into the matter, and Vu, as Salo's MSR liaison, was assigned to assist Choudhary. Choudhary and Vu delegated some fact-finding responsibilities to the clinical supervisor, Dan Sageser. Soon after Choudhary began his investigation, he instructed Sageser to file a complaint against Salo with the FDA.

¶ 11 Salo reported his interactions with Dr. Gouw's staff to Amgen compliance on April 28, 2011. The company later opened its own internal investigation into Salo's actions. In the course of this investigation, Amgen contacted Choudhary to set up a meeting, and he and Vu met with Amgen compliance officers on June 1, 2011, and June 6, 2011. In these meetings Choudhary and Vu repeated the accusations against Salo—that he had improperly promoted an off-label treatment by passing on the information of a physician who had experience using denosumab off-label and that he had improperly given Noda information about Amgen's patient assistance programs to pay for these off-label treatments.

¶ 12 Amgen terminated Salo following its internal investigation. The company made the decision on July 29, 2011. It alerted Salo on August 18, 2011. The company cited four grounds for termination: Salo contacted Amgen Medical Affairs on behalf of the hospital rather than referring hospital staff directly to Amgen; Salo referred Noda to a third-party physician who had experience with off-label use of denosumab; Salo provided patient financial assistance

information to hospital staff in the same meeting where discussing an off-label treatment; and Salo did not document four related events with a formal Amgen Business Reply Card.

¶ 13   Shortly before Salo found out about his termination, he contacted Senator Mike Lee's office. In response to an inquiry from Senator Lee's office, Tyler wrote an email on August 8, 2011, to eleven administrators at the university—administrators directly involved in the investigation or high-level officials who would benefit from knowledge of the situation as they might need to field questions from Senator Lee's office.

¶ 14   Ray Lynch, executive director of the hospital, responded to Tyler's email. Tyler replied on August 10, 2011, copying two other administrators. Her email to Lynch described FDA regulations "that state that a company can't market a drug for off-label use." She also noted that using patient assistance programs for off-label use "is not in the best interest of our patients or the organization."

¶ 15   Salo filed claims against Choudhary and Vu for defaming him during their two June meetings with Amgen compliance officials and for interfering with his employment with Amgen. He also filed against Tyler for defamation and interference with economic relations relating to her two emails to university administrators.

¶ 16   After discovery Tyler—and later Choudhary and Vu—filed motions for summary judgment. Salo opposed these motions. He also moved to strike an affidavit that Choudhary and Vu submitted in support of their motion—the affidavit of Linda Tyler. In Salo's view this affidavit was improper because Tyler had not been identified as a witness under rule 26(a) of the Utah Rules of Civil Procedure.

¶ 17   The district court granted the motions for summary judgment and denied the motion to strike. In denying the motion to strike the district court concluded there was no harm or prejudice to Salo. It concluded that Choudhary and Vu had "been abundantly diligent in making disclosures" and that Salo had a "full opportunity" to depose Tyler and to question the basis for the information contained in Tyler's affidavit.

¶ 18   In granting the motions for summary judgment the district court concluded that the defendants were entitled to immunity under the Utah Governmental Immunity Act, Utah Code sections 63G-7-101 through 63G-7-904. It held, in particular, that the defendants were acting within the scope of their employment and

that Salo had not presented evidence of any "willful" misconduct. On the latter point the district court concluded that Salo had failed to "establish that Defendants knew any of the information that they were relaying to Amgen, its representatives, or other interested parties . . . was false." And the court held that the defendants were entitled to judgment as a matter of law because there was "no evidence establishing that Defendants intentionally set out to commit a wrongful act without just cause."[1]

¶ 19 Salo challenges the entry of summary judgment and the denial of the motion to strike. We review the summary judgment decision *de novo. See Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56. We review the denial of the motion to strike under an abuse of discretion standard. *See Murdock v. Springville Mun. Corp.*, 1999 UT 39, ¶ 25, 982 P.2d 65.

II

¶ 20 Salo challenges both the decision granting defendants' motion for summary judgment and the decision denying his motion to strike. We affirm for reasons explained below.

A

¶ 21 Salo advances three grounds for challenging the decision granting summary judgment under the Governmental Immunity Act. He argues: (1) that the district court erred in assigning to him the burden of coming forward with evidence in response to a motion for summary judgment; (2) that there is a genuine issue of material fact as to whether Choudhary and Vu were acting within the scope of their employment; and (3) that there is a genuine issue of material fact as to the willfulness of the defendants' misconduct. We find none of these points persuasive.

1

¶ 22 Salo questions the summary judgment standard applied by the district court. Citing *Orvis v. Johnson*, 2008 UT 2, 177 P.3d 600, he insists that the moving party always bears the burden of coming

---

[1] The district court also found, in the alternative, that (1) "all of the alleged defamatory statements were subject to a qualified privilege" that Tyler, Choudhary, and Vu did not abuse, and (2) Salo could not establish the causation element of his interference with economic relations claim. We do not reach these alternative grounds.

forward with evidence establishing a basis for judgment as a matter of law. Because Salo was not the moving party, he claims that the district court erred in requiring him to produce evidence of willful misconduct.

¶ 23 Salo's position has an apparent foothold in dicta in *Orvis*. There we admittedly stated that "Utah law does not allow a summary judgment movant to merely point out a lack of evidence in the nonmoving party's case, but instead requires a movant to affirmatively provide factual evidence establishing that there is no genuine issue of material fact." *Orvis*, 2008 UT 2, ¶ 16. And in so stating we purported to distance ourselves from the federal standard set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)—the U.S. Supreme Court decision holding that a moving party may carry its burden of persuasion on summary judgment without producing its own affirmative evidence if the nonmoving party bears the burden of persuasion at trial and the moving party "demonstrate[s] the absence of a genuine issue of material fact." *Id.* at 323; *see Orvis*, 2008 UT 2, ¶ 16 (noting that although *Celotex* "has been the law in the federal courts for over two decades now, it is not Utah law," and expressly "declin[ing] to adopt the reasoning of the *Celotex* decision").

¶ 24 These statements were unnecessary to our decision in *Orvis*, however, because the moving party in *Orvis* was seeking summary judgment "on the merits of his own claim," 2008 UT 2, ¶ 14—a claim on which he would bear the burden of persuasion at trial. Everyone agrees that a moving party bears a burden of coming forward with evidence on matters on which the movant bears the burden at trial. *See Celotex*, 477 U.S. at 323 (noting that a party cannot succeed on a claim without making "a sufficient showing" on elements on which it "has the burden of proof"). And for that reason the disavowal of *Celotex* was not relevant to the decision in *Orvis*.

¶ 25 The *Orvis* opinion, moreover, is not entirely consistent on the question of the moving party's burden. Despite its disavowal of *Celotex* and its apparent adoption of a rule requiring the moving party to "affirmatively provide factual evidence establishing that there is no genuine issue of material fact," the *Orvis* court proceeded to articulate a standard that seems to mirror *Celotex* precisely:

> A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any," that there is no genuine issue of material fact. UTAH R. CIV. P. 56(c). Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (e).

2008 UT 2, ¶ 18.

¶ 26 This is essentially the *Celotex* standard. It says that the extent of the moving party's burden varies depending on who bears the burden of persuasion at trial. A movant who seeks summary judgment on a claim on which it will bear the burden of persuasion at trial cannot seek summary judgment without producing affirmative evidence in support of the essential elements of its claim. But a movant who seeks summary judgment on a claim on which the nonmoving party bears the burden of persuasion may show that there is no genuine issue of material fact without producing its own evidence.

¶ 27 Our recent cases have attributed this standard to *Orvis*. *See, e.g., Jones v. Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 30, 284 P.3d 630 (citing *Orvis* as establishing the above-quoted standard). We have even stated that "our summary judgment jurisprudence regarding burden shifting" is "entirely consistent with *Celotex*." *Id.* ¶ 30 n.9. Yet we have never fully embraced *Celotex*. We have clung, perhaps confusingly, to the notion that our Utah summary judgment standard is somehow distinct from that set forth in *Celotex*. *See id.* (asserting that "we have not adopted *Celotex* in its entirety").

¶ 28 We now repudiate that notion. We hold that our Utah summary judgment standard is in line with the federal standard set forth in *Celotex*.

¶ 29 We do so because we find the *Celotex* standard entirely compatible with the terms and conditions of our rules of civil procedure. *See* UTAH R. CIV. P. 56(a). The governing rule states that a party is entitled to summary judgment "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* The operative requirement is a *showing* of an absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. And that showing can be made without affirmative evidence on the

moving party's side *if* the question presented is one on which the nonmoving party bears the burden of persuasion at trial.

¶ 30 This follows not just from the terms and structure of rule 56, but also by negative implication from rule 50. Summary judgment is judgment before trial. It is appropriate where there is no reasonable basis for the cost and delay associated with trial—where trial is unnecessary because no reasonable factfinder could rule in the nonmoving party's favor. We assess that question at trial under rule 50. That rule says that a claim should be dismissed as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *See* UTAH R. CIV. P. 50(a). The operation of that standard depends on who bears the burden of persuasion at trial. A defendant may move for a directed verdict at the close of the plaintiff's case-in-chief by pointing to the plaintiff's failure to adduce evidence in support of an essential element of one of the plaintiff's claims. Such a motion, moreover, would not require any affirmative evidence on the defense side. Because the plaintiff bears the burden of persuasion, it is the plaintiff who is required to give the jury "a legally sufficient evidentiary basis to find for" the plaintiff on an element of the plaintiff's claims. *Id.* And for that reason we allow the defendant to seek a directed verdict merely by showing that the plaintiff has failed to carry its burden of producing evidence.

¶ 31 The summary judgment standard anticipates—and mirrors—the directed verdict inquiry. If a defendant can show that the plaintiff has no legally sufficient evidentiary basis for its claims at trial, the defendant may establish the lack of a genuine issue of material fact and an entitlement to judgment as a matter of law. And a defendant may make that showing without adducing any affirmative evidence of its own.

¶ 32 This is the federal standard as stated in *Celotex*. And we now embrace it without reservation as completely consistent with our Utah Rules of Civil Procedure.

¶ 33 We also reject Salo's threshold argument on appeal. We conclude that the district court did not err in its statement of the operative standard for summary judgment. Salo is the plaintiff in this case. As plaintiff he bears the burden of establishing the elements of his claims. Thus Tyler, Choudhary, and Vu bore the threshold burden of showing the absence of a genuine issue of material fact and of demonstrating their entitlement to judgment as a matter of law. But they may carry that burden without adducing

affirmative evidence of their own. If the defendants can show that Salo has no evidence of essential elements of his claims then the defendants are entitled to judgment as a matter of law.[2]

2

¶ 34  Salo also challenges the district court's determination that Choudhary and Vu acted within the scope of their employment in investigating his alleged misconduct. Quoting *Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 10, 197 P.3d 654, Salo maintains that "scope of employment questions are inherently fact bound." He also cites evidence that investigating off-label promotion was not part of Choudhary's or Vu's regular duties. And he asserts that this evidence creates a genuine issue of material fact, defeating defendants' entitlement to judgment as a matter of law.

¶ 35 We disagree. The scope of employment standard is statutory. It comes from Utah Code section 63G-7-202(3)(a), which protects employees from personal liability for actions "caused by an

---

[2] This determination is relevant to the second of the two issues addressed below—whether there is a genuine dispute as to whether defendants engaged in "willful misconduct" under Utah Code section 63G-7-202(3)(c)(i). It has no bearing on the threshold question of whether the defendants' alleged acts were within the scope of employment under Utah Code section 63G-7-702(3)(a).

The assertion of governmental immunity is an affirmative defense, *see Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 14, 356 P.3d 1172, and the defendants accordingly bear the burden of establishing the *prima facie* basis for immunity—that their alleged conduct is within the "scope of employment" under Utah Code section 63G-7-202(3)(a). But proof of "willful misconduct" is different. "Willful misconduct" appears in a list of grounds for establishing an abuse of the governmental immunity privilege—acts like "fraud," "willful misconduct," or the intentional fabrication of evidence, for which a defendant is liable (and not immune) even if performed within the scope of employment. *See* UTAH CODE § 63G-7-202(3)(c). And, as Salo concedes, the plaintiff bears the burden of establishing the existence of such grounds. *Cf. Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 20, 221 P.3d 205 (noting that once a defendant has shown the existence of a qualified privilege, the burden shifts to the plaintiff to show abuse of the privilege).

act or omission that occurs . . . within the scope of employment." This incorporates a principle from the law of agency. And the analysis is accordingly informed by our case law defining the agency principle of "scope of employment"—in particular the standard set forth in *Birkner v. Salt Lake County*, 771 P.2d 1053, 1057–58 (Utah 1989), as modified in *M.J. v. Wisan*, 2016 UT 13, ¶ 55, 371 P.3d 21.[3]

¶ 36 The district court's approach was in line with the standard set forth in *Birkner*. An employee's action is within the scope of employment under *Birkner* if it is (1) "of the general kind the employee is employed to perform" and (2) "motivated, at least in part, by the purpose of serving the employer's interest."[4] *Birkner*, 771 P.2d at 1057. Thus, an employee acts within the scope of employment when her acts are "generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto." *Id.* The question is whether the worker is performing "duties assigned by the employer, as opposed to being wholly involved in a personal endeavor." *Id.*

¶ 37 It is beside the point under this standard that investigating off-label promotion was not a "regular" duty for Choudhary and Vu—or, as Salo indicates, that "there were no policies or procedures to guide an investigation" of this sort. Regularity is not the question. And an employer need not have an established policy or procedure for everything within the scope of employment. All that matters is that the work is "of the general kind" assigned to the employee and

---

[3] *See Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 ("[W]hen a word or phrase is 'transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947))); *Nuñez v. Albo*, 2002 UT App 247, ¶ 11–18, 53 P.3d 2 (applying *Birkner* in the governmental immunity context).

[4] *Birkner* also sets out a third element—that "the employee's conduct must occur within the hours of the employee's work and the spatial boundaries of the employment." *Birkner*, 771 P.2d at 1058. But we have repudiated that element on the ground that "spatial and time boundaries are no[t] . . . essential hallmarks of an agency relationship." *M.J.*, 2016 UT 13, ¶ 55.

that the employee is motivated at least to some degree "by the purpose of serving the employer's interest." *Id.*

¶ 38 There is no genuine issue under the governing standard. This was not a rogue action by isolated employees. It was a coordinated hospital investigation. The hospital had a strong interest in investigating and resolving a matter that could lead to the imposition of sanctions by the FDA. And Tyler was acting appropriately in assigning someone within the hospital system to investigate the allegations against Salo. Choudhary and Vu, moreover, were acting under direction from their supervisors. They were protecting the interests of the hospital and performing "duties assigned by the employer"; in no sense were they "involved in a personal endeavor." *See id.*

¶ 39 We affirm on this basis. We conclude that there was no genuine issue of material fact on the question of whether the defendants were acting within the scope of their employment. In so holding we clarify that the notion that a particular question may *often* be "fact bound," *see Newman*, 2008 UT 79, ¶ 10, is no categorical barrier to its resolution on summary judgment. The relevant question is not whether a particular question *generally* or *typically* is susceptible to summary disposition; it is whether there is a genuine dispute of fact in an individual case as presented on the record before the court. Here we find that there is no genuine issue of material fact. And we affirm summary judgment despite the notion that scope of employment questions may often be subject to dispute.

3

¶ 40 Salo also claims that there is a genuine issue of material fact as to whether Tyler, Choudhary, and Vu engaged in willful misconduct. Here Salo points to evidence in the record that the defendants held ill will toward him and sought to injure him. And because Salo sees willfulness as turning on a defendant's state of mind, he contends that this matter should not have been resolved on summary judgment.

¶ 41 Willfulness, again, is a statutory construct. *See* UTAH CODE § 63G-7-202(3)(c)(i) (immunity for acts within the scope of employment may be defeated if the defendant engaged in "willful misconduct"). By statute, "willful misconduct" is "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." *Id.* § 63G-7-102(11). Thus, willfulness requires a showing (1) that the government actor intentionally

performed a wrongful act (2) with an awareness that injury will likely result.

¶ 42 We affirm the entry of summary judgment under this standard. We conclude that the defendants were entitled to judgment as a matter of law because Salo failed to adduce evidence that the defendants intentionally engaged in any wrongful act.

¶ 43 Salo has charged defendants with two sets of wrongful acts—defamation and interference with economic relations. But the allegation of defamation is at the heart of both claims. The interference claim requires proof of wrongful interference. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553. And Salo's only assertion of wrongfulness is his allegation of defamatory statements. So both claims rise or fall on the basis of Salo's ability to establish not just a false, defamatory statement but an *intentional* one.

¶ 44 A defamatory statement is wrongful only if it is false. And defamation is intentional (and thus willful) only if the defendant had knowledge of its falsity. That means that Salo bears the burden of showing not just that the defendants made false, defamatory statements but that they did so with knowledge of falsity.

¶ 45 We affirm the entry of summary judgment because Salo has failed to carry his burden of producing such evidence. Much of the evidence cited by Salo goes to the defendants' knowledge that their statements would likely cause Salo harm. But that is insufficient. To defeat summary judgment, Salo must do more than just show that the defendants knew their statements would harm him; he must present evidence that they knew their statements were false.

¶ 46 Salo points to two pieces of evidence in support of his assertion that the defendants knew that their statements were false. But neither of them is sufficient to defeat summary judgment.

¶ 47 First, Salo highlights a letter that Linda Tyler received from Dr. Gouw. The letter, sent and received before Tyler sent her allegedly defamatory emails, indicates Dr. Gouw's view that Salo "represented himself in a completely professional manner and never tried to promote the use of his products outside the authorized FDA indications." Salo cites the letter in support of his view that the patient's "treatment was ordered based on Dr. Gouw's clinical judgment and not on advice or counsel of Mr. Salo."

¶ 48 This letter, however, falls far short of showing that Tyler knew that the contents of her emails were false. Tyler's emails accused Salo of indirectly promoting off-label use by giving information to Dr. Gouw's staff about patient assistance. And the

Gouw letter does nothing to show that Tyler knew that these accusations were false. The letter establishes only Dr. Gouw's views; and Dr. Gouw seems to be speaking of direct promotion. As to indirect promotion, the Gouw letter actually reinforces the basis for the concerns expressed in Tyler's emails.

¶ 49 Tyler's concerns about indirect promotion were rooted in a report from John Vu—a report suggesting that Salo had provided the information of an out-of-state physician who had used denosumab off-label. Tyler was concerned that this amounted to indirect promotion of an off-label use. And Dr. Gouw's letter does nothing to rebut this concern. If anything the letter seems to reinforce it. It states that "Mr. Salo also provided contact information for another specialist at MD Anderson Cancer Center to discuss their institutional experience with denosumab."

¶ 50 The Gouw letter also reinforced another concern about Salo's indirect promotion—that he had provided information about Amgen's patient assistance programs while knowing that Dr. Gouw intended to use the drug off-label. Dr. Gouw wrote that "Mr. Salo provided information on First Step Program as well as about Safety Net" and that the "[a]pplication has been completed for assistance from Amgen."

¶ 51 For these reasons the Gouw letter in no way shows that Tyler knew that the statements in her emails were false. That letter speaks only to Dr. Gouw's view that Salo had not engaged in direct promotion. And it reinforces a basis for Tyler's concerns about indirect promotion.

¶ 52 Salo also highlights a comment made by Kavish Choudhary to a colleague—a comment suggesting that Salo had been fired for being in the clinic areas and for harassing clinic staff. Choudhary had been informed earlier that Salo had never been in the clinic area, so in Salo's view Choudhary must have known that this statement was false. But Choudhary made the statement about Salo's firing months after Amgen terminated Salo. So the cited statement tells us nothing about whether Choudhary knew of the falsity of statements he made months earlier (at the time of Salo's termination). At most the cited statement could provide a basis for a determination that Choudhary had some sort of malice toward Salo. But again that is insufficient.

¶ 53 For these reasons we affirm the entry of summary judgment on the ground that Salo failed to produce evidence of willfulness. In so doing we also reject Salo's assertion that

willfulness turns on state of mind, and that state of mind is always a question for the factfinder. That is often the case. But not always. It depends on whether there is a genuine issue of material fact. As with the scope-of employment question, Salo is not entitled to go to trial on a factual question on which he fails to identify evidence establishing a basis for a reasonable jury verdict in his favor. We affirm because Salo has failed to present a basis for a reasonable jury to conclude that Tyler, Choudhary, or Vu engaged in willful misconduct by disseminating information they knew to be false.

B

¶ 54   Salo moved to strike the affidavit of Linda Tyler, submitted by Choudhary and Vu in support of their motion for summary judgment. The basis for challenging the affidavit was the failure of these defendants to identify Tyler as a witness in the final disclosure they submitted under rule 26(a) of the Utah Rules of Civil Procedure. The district court denied Salo's motion on the ground that the lack of disclosure caused no harm or prejudice to Salo. It concluded, specifically, that Choudhary and Vu had "been abundantly diligent in making disclosures," that Salo knew that Tyler would likely be a witness, and that Salo had a "full opportunity" to depose Tyler and inquire into the basis for the information in Tyler's affidavit.

¶ 55   Salo challenges this decision as an abuse of discretion. He asserts that the district court could not rely on Tyler's affidavit because Choudhary and Vu failed to follow rule 26(a), which requires each party to identify "each fact witness the party may call in its case-in-chief and, except for an adverse party, a summary of the expected testimony." UTAH R. CIV. P. 26(a)(1)(A)(ii). This rule is designed "to give the other side basic information concerning the subjects about which the witness is expected to testify at trial, so that the other side may determine the witness's relative importance in the case." *Id.* (Advisory Committee Notes).

¶ 56   Choudhary and Vu initially listed Tyler as a witness they expected to call at trial. But they dropped her from their rule 26(a) witness list after the district court granted her motion for summary judgment. And the timing of this amended disclosure takes the wind out of the sails of Salo's motion. Because Tyler was included in previous witness lists and discovery had been completed by the time the revised list was submitted, the omission of Tyler had no effect on Salo's discovery or pretrial preparation.

¶ 57   Salo also deposed Tyler. In the deposition Salo had every opportunity to inquire into all of the issues she testified to in her

affidavit. If Salo saw some prejudice in the failure to identify Tyler in the last round of disclosures he could have sought a deferral or additional time for discovery under rule 56(d) of our rules of civil procedure. This he failed to do.

¶ 58   We affirm on this basis. We hold that the district court acted well within its discretion in denying the motion to strike on the basis of a lack of prejudice.

### III

¶ 59   The district court applied the correct summary judgment standard. It also properly determined that the defendants were entitled to judgment as a matter of law and that the motion to strike failed for a lack of prejudice.

_____