*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2025 UT 35**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KAMI F. MARRIOTT, as personal representative of the estate of
RANDY E. MARRIOTT,
*Appellant,*

*v.*

TERESA WILHELMSEN, Utah State Engineer,
WEBER BASIN WATER CONSERVANCY DISTRICT, and
UTAH DIVISION OF WILDLIFE RESOURCES,
*Appellees.*

No. 20230963
Heard April 11, 2025
Filed August 14, 2025

On Direct Appeal

Second District Court, Farmington
The Honorable Jennifer L. Valencia
No. 230700645

Attorneys:

Robert E. Mansfield, Megan E. Garrett, Michael W. Combs,
Salt Lake City, for appellant

Derek E. Brown, Att'y Gen., Andrew Dymek, Asst. Solic. Gen.,
Julie I. Valdes, Asst. Att'y Gen., Salt Lake City, for appellee
Teresa Wilhelmsen, Utah State Engineer

Jody L. Williams, Richard D. Flint, Melissa L. Reynolds,
Salt Lake City, for appellee
Weber Basin Water Conservancy District

Derek E. Brown, Att'y Gen., Andrew Dymek, Asst. Solic. Gen.,
Salt Lake City, for appellee Utah Division of Wildlife Resources

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1　Randy Marriott filed an application to appropriate water in 1997. More than twenty years later, the Utah State Engineer (Engineer) denied that application, and Marriott appealed. While the appeal was pending in the district court, Marriott unexpectedly passed away. Soon after, Marriott's counsel (Marriott)[1] filed a motion under rule 25 of the Utah Rules of Civil Procedure to substitute his estate's personal representative as plaintiff in the case to continue his appeal. The district court denied the motion to substitute and dismissed the case.

¶2　This appeal centers around one question: whether the district court erred when it concluded that Marriott's death extinguished his challenge to the Engineer's denial of his

---

[1] Court opinions regularly ascribe the actions of counsel to their principal. But we recognize the oddity of ascribing actions taken by Randy Marriott's counsel to Randy Marriott himself after his death. We also acknowledge that this case comes before us in an odd procedural posture that makes it difficult to clearly speak of the appellant in shorthand.

This appeal is before us on the denial of a motion to substitute Randy Marriott's personal representative as plaintiff in this litigation. At the time of the motion to substitute, the parties expected Kami Marriott to be named as personal representative, but she had not yet been appointed. She has since been appointed. Because of the district court's denial of the motion to substitute, Randy Marriott, acting through counsel, remains the plaintiff before the district court. But before we recalled the case to this court, the court of appeals granted the motion of appellant's counsel to substitute Kami Marriott, acting as Randy Marriott's personal representative, as appellant for purposes of this appeal.

The proper appellant before this court is therefore Kami Marriott, acting as personal representative of Randy Marriott's estate. Still, because distinguishing who was acting at various times is both confusing and unnecessary to our legal analysis, for ease of explanation, throughout this opinion we ascribe all actions by counsel for both Kami Marriott and Randy Marriott during this litigation to Marriott, meaning Randy Marriott.

application to appropriate water and dismissed the case under rule 25(a)(1) of the Utah Rules of Civil Procedure. We find no common law cases considering the survival of a claim for review of an administrative decision. And we hold that Marriott has identified no appropriate common law analog permitting us to extend the common law survival rules to his claim. Further, the statute under which his claim arose does not provide for survival. Marriott's death therefore extinguished his claim, so we affirm the district court's dismissal of the case.

## BACKGROUND

¶3 In 1997, Marriott applied to the Division of Water Rights for approval to divert 35.0 second feet of water from a surface source in Weber Basin to provide irrigation and water for livestock.[2] Notice of the application was published, and Weber Basin Conservancy District (Weber Basin) and the Utah Division of Wildlife Resources (Division), among others, protested the application. The Engineer held a hearing on the application in 1998.

¶4 In 2008, after the application had been pending for a decade, the Engineer sent a letter to Marriott asking whether he wished to continue pursuing his application, and Marriott responded that he did. Over the next ten years, Marriott communicated with the Engineer a few times to provide additional information about the application. In 2018, more than twenty years after the original filing, the Engineer rejected Marriott's application and declined to respond to Marriott's subsequent request for reconsideration.

¶5 Marriott then filed a complaint in the district court, seeking to reverse the Engineer's decision. Marriott alleged the Engineer's decision was wrong because (1) the source from which Marriott sought to divert contained unappropriated water; (2) his application would not interfere with downstream water rights; and (3) his application was governed by its 1997 filing date, making it senior to other water rights already approved by the Engineer. Weber Basin and the Division intervened as defendants in the case.

---

[2] Marriott's application sought to appropriate water currently flowing from the outfall of the Central Weber Sewer Improvement District Sewer Treatment Plant into the Warren Irrigation Company Canal based on an agreement between Central Weber and Warren Irrigation Company.

¶6    In 2023, while the case was pending in the district court, Marriott unexpectedly passed away. Marriott then moved under rule 25(a)(1) of the Utah Rules of Civil Procedure to name his expected personal representative as the plaintiff to continue litigation in his place. To support the motion to substitute, Marriott argued for a broad interpretation of the common law, asserting that any claim "*related* to real property or property rights" survives the death of the original claimant. He asserted that because his claim related to an inchoate water right and was not merely a personal claim, it did not abate at death. Weber Basin, the Division, and the Engineer opposed the motion, arguing that Marriott interpreted the common law too broadly. They asserted that only claims for "property damage or conversion" could survive. And, they argued, the application itself did not create a property right, so its denial could not be an injury to property. They further contended that no statute allowed the claim to survive.

¶7    The district court denied Marriott's motion to substitute. It held that his claim did not survive because (1) he possessed no perfected property right and (2) any inchoate right in the application to appropriate water was not mentioned in his will. It also ruled that Utah's general survival statute did not permit Marriott's claim to survive. Marriott appealed.

## ISSUES AND STANDARDS OF REVIEW

¶8    Marriott appeals the district court's denial of his motion to substitute and the corresponding dismissal of his claim under rule 25(a)(1) of the Utah Rules of Civil Procedure. We review a district court's ruling on a motion to substitute for an abuse of discretion.[3] But we note that a district court "abuses its discretion if it commits legal error."[4]

¶9    Marriott also argues that the district court incorrectly held that he had the burden to prove that his claim did not abate on his death. We review a district court's "allocation of the burden of proof for correctness."[5]

---

[3] *Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶ 8, 449 P.3d 20.

[4] *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 52 n.15, 289 P.3d 369.

[5] *Searle v. Milburn Irrigation Co.*, 2006 UT 16, ¶ 14, 133 P.3d 382.

## ANALYSIS

¶10   After Marriott's death, he moved to substitute his personal representative as plaintiff in the administrative appeal of the denial of his water application. Rule 25(a) of the Utah Rules of Civil Procedure governs the substitution of parties after a party dies. That rule provides, in relevant part:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party. . . . Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record . . . , the action shall be dismissed as to the deceased party.[6]

In other words, after a party's death, any party may move for substitution.[7] Absent a timely motion to substitute, the case is "dismissed as to the deceased party."[8] Once the motion is filed, substitution is allowed only if (1) the claims survived the party's death; (2) the proposed substitute is a proper party; and (3) the motion is timely.[9] On appeal, the parties dispute only the first requirement: whether the claim survived Marriott's death.

¶11   As an initial matter, Marriott argues that he does not bear the burden of demonstrating that his claim survived. Rather, he argues that the parties opposing his claim bear the burden to prove that his death abated the claim. While acknowledging the general principle that a moving party bears the burden of proof,[10] he argues that abatement is an affirmative defense that shifts the burden to the party asserting it.

---

[6] UTAH R. CIV. P. 25(a)(1).

[7] *Id.*

[8] *Id.*

[9] *See id.*

[10] *See Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 56, 469 P.3d 989 ("A motion implies a burden that a party must meet to be awarded the relief it seeks.").

¶12 We disagree. While it is true that the burden of proof may vary based on the type of motion and the procedural posture of a case,[11] under rule 25, the burden is on the party seeking substitution to prove that substitution is proper.[12] The rule establishes a default: if a motion for substitution is not timely filed, the case is dismissed as to the decedent.[13] This inherently places a burden on the movant, the party seeking to continue the action.[14] So as movant, Marriott had the burden to demonstrate that his claim was not extinguished by his death.[15]

¶13 We now turn to consider whether Marriott's claim survived his death. Whether a given claim survives or is extinguished depends on the nature of the claim itself.[16] Under our caselaw, we first evaluate whether Marriott's claim survives under common law principles.[17] Determining that it does not, we then turn to whether the claim survives under the statute that created it.[18] Because that statute does not mention survival, we conclude

---

[11] *See, e.g.*, *State v. Labrum*, 2025 UT 12, ¶¶ 45–46, 568 P.3d 1075 (explaining that if a defendant can "articulate a reasonable basis" to believe that the State refiled criminal charges in bad faith, the burden shifts to the State to prove that it did not); *State v. Smith*, 2022 UT 13, ¶ 35, 513 P.3d 629 (describing a criminal defendant's limited burden of production on a motion to suppress evidence for a Fourth Amendment violation before the burden shifts to the government); *Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581 (discussing parties' shifting burdens on a motion for summary judgment, which vary based on who bears the burden on an issue at trial).

[12] *See* UTAH R. CIV. P. 25(a)(1).

[13] *Id.*

[14] *See id.*

[15] *See id.*; *see also Trapnell*, 2020 UT 44, ¶ 56.

[16] *See Gressman v. State*, 2013 UT 63, ¶¶ 7–9, 323 P.3d 998.

[17] *See id.* ¶ 10.

[18] *See id.* Utah's general survival statute also provides that certain tort claims survive the death of either the injured party or the wrongdoer. *See* UTAH CODE § 78B-3-107(1). But neither party argues that the general survival statute applies here.

that Marriott's claim did not survive his death and affirm the judgment of the district court.

## I. MARRIOTT'S CLAIM DOES NOT SURVIVE UNDER COMMON LAW PRINCIPLES

¶14 We first consider whether Marriott's claim for judicial review of the Engineer's denial of his application to appropriate water survived Marriott's death under the common law. Under Utah common law, tort claims of property damage or conversion survive the original claimant's death because "a cause of action for injury done to [property] can achieve its purpose as well after the death of the owner as before."[19] But personal tort claims do not survive, because "the reason for redressing purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished."[20] Caselaw also suggests that most contract claims survive the death of the owner of the claim.[21]

¶15 Marriott asserts that based on this caselaw, his claim survives so long as it is "related to property." In contrast, the appellees assert that only claims for damage to property survive. But despite the parties' efforts to harmonize our cases, Marriott's claim simply does not fit into any existing common law rule of survival. It is not a tort claim.[22] It is not a contract claim.[23] Marriott instead claims a right to appeal the administrative decision of a state agency denying his application to appropriate water. The common law does not address the survival of this type of claim.

¶16 Having concluded that we are in uncharted territory, we turn to consider whether Marriott's claim is sufficiently analogous to any survivable common law claim such that we should extend common law survival principles to his administrative appeal.

---

[19] *Gressman v. State*, 2013 UT 63, ¶ 7, 323 P.3d 998 (cleaned up).

[20] *Id.* (cleaned up).

[21] *See Mason v. Union Pac. Ry. Co.*, 24 P. 796, 796 (Utah 1890) (noting that the maxim that personal actions die with the person "is not applied in the old authorities to causes of action on contracts" (cleaned up)).

[22] *Cf. Gressman*, 2013 UT 63, ¶ 7.

[23] *Cf. Mason*, 24 P. at 796.

Marriott urges us to analogize his claim to traditional tort claims.[24] But, for the reasons explained below, we are not persuaded that Marriott's claim is analogous to any tort claim that was survivable at common law, so we decline to extend the common law survival rule to his claim.

¶17 Marriott contends that, under the common law, any claim that "relate[s] to real property or property rights" survives. He therefore asserts that because his claim relates to water rights, which are themselves either property rights or related to real property, his claim should survive. But his broad proposed test is not supported by the authority he cites.[25]

¶18 Marriott first points to *Sevastopoulos v. Wells Fargo Bank*, a case out of the federal district of Utah.[26] There, a plaintiff-beneficiary alleged that her trustee breached her fiduciary duties, resulting in an unwarranted lien on the plaintiff's house.[27] The

---

[24] Marriott also briefly analogizes his claim to inchoate dower rights. But we find the analogy inapposite because, at common law, dower rights "depend[ed] entirely upon the condition that [a wife] survive her husband." *Gee v. Baum*, 199 P. 680, 683 (Utah 1921). In other words, dower rights were not survivable. And Marriott mentions in passing a discussion of prejudgment attachment liens from a bankruptcy case out of the U.S. District Court for the Middle District of North Carolina. *See Ivester v. Miller*, 398 B.R. 408, 419–21 (M.D.N.C. 2008). That case recognizes that under North Carolina law, prejudgment attachment liens remain inchoate until a state court enters final judgment. *See id.* Like the filing date of Marriott's water application, a lien's attachment date dictates priority, so the liens in that case would have priority over subsequent creditors— but only once the liens were perfected by final judgment. *See id.* The lien analogy does not get Marriott very far, because the case he cites does not discuss survival or demonstrate that *any* inchoate property right is survivable. And, as we will see, even if we treat Marriott's application as an inchoate property right, that does not guarantee survival here.

[25] *See Sevastopoulos v. Wells Fargo Bank*, No. 2:19-cv-00182, 2020 WL 6940708 (D. Utah Nov. 25, 2020); *Slavens v. Millard Cnty.*, No. 2:11-CV-00568, 2013 WL 5308105 (D. Utah Sep. 20, 2013).

[26] 2020 WL 6940708.

[27] *Id.* at *1–2.

plaintiff died while the litigation was pending, leading the court to consider whether her claim was "one of property damage such that it survives her death at Utah common law."[28] It noted that "property damage claims" could "include actions related to real property," as well as actions related to tangible personal property.[29] And it reasoned that the lien would adversely affect the value of the property by making it more difficult to sell the house in the future.[30] So the claim was one for property damage and survived the plaintiff's death.[31] The court never asserted that any claim "related to property" would survive—only that claims involving property damage survive at common law.[32]

¶19 Marriott also points to *Slavens v. Millard County*, another federal district of Utah case.[33] Quoting a national treatise, the court summarized the common law survival rule in this way:

> At common law survivable actions are those in which the wrong complained of affects primarily property and property rights, and in which any injury to the person is incidental, while nonsurvivable actions are those in which the injury complained of is to the person and any effect on property or property rights is incidental.[34]

This statement of the law is arguably closer to Marriott's proposed test: that a claim survives if it is "related to property." But the *Slavens* court had no need to analyze with specificity which types of property claims are survivable at common law because the court found that the claims at issue qualified as personal injury claims that fell within the scope of Utah's general survival statute.[35] And

---

[28] *Id.* at *2.

[29] *Id.*

[30] *See id.*

[31] *Id.*

[32] *See id.*

[33] 2013 WL 5308105.

[34] *Id.* at *2 (quoting 1 AM. JUR. 2D *Abatement, Survival, & Revival*, § 51 (2013)).

[35] *See id.* at *2–3.

we are not persuaded that all claims affecting property rights are automatically survivable.

¶20 Rather, under Utah common law, "personal tort actions abate upon the death of either the claimant or the tortfeasor, while tort claims for property damage or conversion survive."[36] So we must determine whether Marriott's claim for judicial review of the denial of his water rights application is analogous to a claim for property damage or conversion. If it is, it may survive his death.

¶21 A perfected water right is undoubtedly a property right.[37] And a claim that a third party wrongfully misappropriated or interfered with that water right may qualify as injury to that property for survival purposes.[38]

¶22 But Marriott never had a perfected water right. He had only an application to appropriate water that the Engineer had denied. "The Utah Code requires the completion of certain steps before a right to use water—a water right—comes into existence."[39] An application "confers upon the applicant no perfected right to the use of water."[40] Indeed, even an approved application remains unperfected until a certificate of appropriation is issued.[41] An approved application to appropriate "merely clothes the applicant with authority to proceed and perfect, if he can, his proposed appropriation by the actual diversion and application of the water claimed to a beneficial use."[42]

¶23 Marriott claims that the denial of that application qualifies as an injury to property. But an application creates no right to the water itself. The possibility that, through the application process, Marriott could obtain a future water right is simply too speculative

---

[36] *Gressman*, 2013 UT 63, ¶ 7.

[37] *See In re Bear River Drainage Area*, 271 P.2d 846, 848 (Utah 1954).

[38] *See Gressman*, 2013 UT 63, ¶ 7.

[39] *Little v. Greene & Weed Inv.*, 839 P.2d 791, 794 (Utah 1992).

[40] *See Little Cottonwood Water Co. v. Kimball*, 289 P. 116, 118 (Utah 1930).

[41] *See Loosle v. First Fed. Sav. & Loan Ass'n of Logan*, 858 P.2d 999, 1002 (Utah 1993); *see also Greene & Weed*, 839 P.2d at 794.

[42] *Little Cottonwood Water*, 289 P. at 118.

to qualify as property. And without a property interest in the water right, the denial of the application could not be an injury to property.

¶24  Marriott also cites *McGarry v. Thompson* for the proposition that an application to appropriate "is a valuable inchoate right which may mature into a vested right to the use of water."[43] While the application itself may have some value as an inchoate right, the fact that the application may possibly mature into a vested property right is not sufficient to ensure survival under common law tort rules. Those rules require injury to a presently held property interest.[44] Where Marriott had no present property interest, we decline his request to extend the common law to this type of claim.

¶25 Marriott also argues that because an application to appropriate water is transferable, it is survivable. Marriott points out that Utah Code section 73-3-18 allows applicants to assign unapproved applications to appropriate,[45] and he notes that caselaw "has already recognized that inchoate rights created by a water rights application can be transferred."[46]

¶26 But whether inchoate rights can be *transferred* while a claimant is alive is a different inquiry than whether inchoate rights may *survive* when a claimant dies. That a water rights application can be transferred may show the application has some identity separate from an applicant's personal interest. But that does not mean that Marriott's claim for appeal of the denial of the application is a claim for damage to property, as required by the common law.[47]

¶27 Finally, Marriott contends that litigation itself is a right that can be transferred. He therefore reasons that the right to

---

[43] *See* 201 P.2d 288, 292 (Utah 1948).

[44] *See Gressman*, 2013 UT 63, ¶ 7.

[45] *See* UTAH CODE § 73-3-18(4). This provision was previously housed in subsection (5), but was renumbered without amendment in 2025. *See* Water Rights Applications Amendments, H.B. 46 § 1, 2025 Leg., Gen. Sess. (Utah 2025). We refer to the current version for convenience and clarity.

[46] (Citing *Loosle*, 858 P.2d at 1003.)

[47] *See Gressman*, 2013 UT 63, ¶ 7.

litigate his denied application to appropriate water should be survivable. But we reiterate that the tests for transferability and survivability are separate and distinct. Because causes of action can generally be transferred,[48] if transferability equated to survivability, the survival requirement embedded in rule 25(a)(1) would become meaningless. We decline Marriott's invitation to rewrite both our common law and our rules to permit survival of his claim.

¶28 In sum, the common law does not address the survivability of a claim for review of an agency decision denying an application to appropriate water. And Marriott has not persuaded us that tort law principles permitting claims for property damage to survive apply or should be extended here. We thus find no common law right to survival. So we turn to the statutory provision that created Marriott's claim to determine whether it allows his claim to survive.

## II. NO STATUTORY PROVISION ALLOWS MARRIOTT'S CLAIM TO SURVIVE

¶29  If a claim does not survive at common law, it may survive based on statute.[49] Utah Code section 73-3-14—under which Marriott brought his claim—allows "[a] person aggrieved by an order of the state engineer" to "obtain judicial review."[50] We therefore look to that statute to determine whether the legislature intended for this type of claim to survive.[51] And "[t]he best evidence of the legislature's intent is the plain language of the statute itself."[52] In interpreting the statute, "we assume the legislature used each term advisedly and in accordance with its ordinary meaning."[53]

¶30 Marriott acknowledges that title 73 of the Utah Code, related to water and irrigation, "does not expressly discuss survival

---

[48] *See Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶¶ 16–17, 44 P.3d 699.

[49] *See Gressman v. State*, 2013 UT 63, ¶ 10, 323 P.3d 998.

[50] UTAH CODE § 73-3-14(1)(a).

[51] *See Gressman*, 2013 UT 63, ¶ 11.

[52] *State v. Miller,* 2008 UT 61, ¶ 18, 193 P.3d 92 (cleaned up).

[53] *Id.* (cleaned up).

or abatement," but he argues that it offers "an indication of survivability with its provisions relating to assignment and conveyance." He points to Utah Code section 73-3-18, which states that "a right claimed under an application for the appropriation of water may be assigned."[54]

¶31  But assignment and survival are not identical processes. In fact, under Utah caselaw, for a right to be assignable, it must first be the type of claim that would survive the death of the original claimant.[55] Survival is the first inquiry. To read assignability to mean survivability would reverse that test and render it hollow.

¶32  Marriott does not point to any provision in the statute that suggests that when the legislature said the application "may be assigned," it meant "may survive."[56] He asserts that survivability can be inferred based on legislative intent. But he fails to provide any source of that legislative intent. And "[w]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent."[57] Instead, we apply "the rule that a statute should generally be construed according to its plain language."[58] We also "presum[e] all omissions to be purposeful."[59] We thus treat the omission of survivability in title 73 as a deliberate omission, suggesting that the legislature intended for claims for administrative appeal of a denied water right to abate on the death of the original claimant. Because Marriott has identified no statutory provision that would prevent abatement here, the district court correctly dismissed his claim.

---

[54] UTAH CODE § 73-3-18(4).

[55] *See Lawler v. Jennings*, 55 P. 60, 61 (Utah 1898) ("The general test applied in determining the assignability of a chose in action is whether or not it would survive and pass to the personal representative of a decedent. If it would so survive, it may be assigned . . . ; if it does not so survive, it is not assignable . . . .").

[56] *See* UTAH CODE § 73-3-18(4).

[57] *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989).

[58] *Id.*

[59] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (cleaned up).

**CONCLUSION**

¶33 Marriott appeals the dismissal of his claim for judicial review of the denial of his application to appropriate water. While our caselaw provides that tort claims for damage to property or for conversion survive the death of the original claimant, Marriott's claim is neither a tort claim nor a claim for damage to property. We decline to extend the common law rule of survivability to his claim. And we further conclude that no statute allows his claim to survive his death. The district court correctly dismissed the claim, and we affirm.

———————