## STEPHENS HAYS ESTATE, Inc., v. TOGLIATTI et al.

No. 5249. Decided December 28, 1934. (38 P. [2d] 1066)

138

*Badger, Rich & Rich,* of Salt Lake City, for appellant.

*W. S. Dalton* and *L. B. Wight,* both of Salt Lake City, and *A. C. Cole,* of Bingham Canyon, for respondents.

ELIAS HANSEN, Justice.

Plaintiff brought this suit to quiet title to water containing copper in solution and to require defendants to render an accounting of the copper which they had recovered from the water during the four years immediately preceding the commencment of this suit. The defendant Joe Dandrea was not served with summons and did not enter his appearance in the cause. Defendant Sam Togliatti answered. He denied that plaintiff had any right or title to the water in question and alleged that he was the owner thereof and entitiled to the copper contained therein. A trial was had to the court sitting without a jury. Findings of fact, conclusions of law, and a decree were made and entered in favor of the defendant and against the plaintiff. The title to the water in controversy was quieted in the defendant. The decree also quieted in defendant title to the land on which copper was being precipitated from the water. Plaintiff appeals. It seeks a reversal of the decree because, as it claims, various of the findings, the conclusions of law and the decree are not supported by, but are contrary to, the evidence. Defendant concedes, as well he may, that the court below was in error in quieting in him the title to the land upon which the copper is and has been precipitated from the water. There is no issue raised by the pleadings or the evidence as to the title of the respective parties to the land. The sole question which divides the parties is with respect to the title to the water and the right to remove the copper therefrom. Upon that issue the evidence shows the land and water involved in this controversy are located in Bingham Canyon, Salt Lake county, Utah. The land upon

which the water in litigation occurs was formerly owned by one Stephen Hays, who one November 8, 1910, conveyed the surface right to defendant's predecessor in title. The deed of conveyance contains these provisions:

"This deed made this 8th day of November, 1910, by and between S. Hays and M. A. Hays, his wife, grantors of Salt Lake City, County of Salt Lake, State of Utah, hereby quit claim to William H. Meyers grantee of Bingham Canyon, Salt Lake County, Utah, for the sum of One and no/100 Dollars, the following described tract of land in Salt Lake County, State of Utah.

"That certain piece or parcel of surface ground situated on the Westerly side of Main Canyon, Bingham Canyon, Utah, known as part of Lot 7, Block 10, Plat A, Wilkes Official Survey, and described as follows (then follows a description of the property)."

The deed then provides that "all minerals on or in the land conveyed and the right to mine the same are especially excepted from these presents."

By mesne conveyances defendant acquired, and during the time complained of owned the surface right in the land which Hays conveyed to Meyers. The minerals reserved by Hays were conveyed to plaintiff. It owned such minerals during the time complained of. Under date of July 13, 1925, a "certificate of appropriation of water" was issued by the state engineer of Utah to Henry N. Standish, who, at that time, was the owner of the surface of the land now owned by defendant. The certificate of appropriation granted to Standish the right to use for the precipitation of copper .2 of a cubic foot of water per second to be diverted throughout the year from Bingham creek. After the copper is precipitated, the certificate directs that the water be returned to the creek. The point of diversion of the water from Bingham creek is fixed in the certificate of appropriation as 235 feet from the place of the proposed use of the water. At the time Mr. Standish filed on the water of Bingham creek, and at the time he received from the state engineer the certificate of appropriation heretofore mentioned in this opinion, he had a written mining lease from Stephen Hays. The

lease granted to Mr. Standish the right to recover all metals that might be found in all running or percolating water on or in the mining claim known as "The Valentine Patent." By the terms of the lease Mr. Hays was to receive 10 per cent of the proceeds derived from the sale of the metals recovered. The lease was dated April 1, 1922, and was to continue in effect for a period of five years. The land involved in this litigation is a part of the Valentine Patent mining claim mentioned in the lease so given to Henry N. Standish by Stephen Hays. After Mr. Standish filed on the water of Bingham creek, he constructed a number of tanks and a pipe line extending from Bingham creek to the tanks. Water was conveyed from the creek into the tanks where copper was precipitated from the water. After the process of precipitating the copper was completed, the water was returned to the creek. Near the tanks was a shaft about 16 feet deep. A drift extended from the bottom of the shaft out towards and under the bed of Bingham creek. The tanks and shaft were located on the land involved in this controversy; that is to say, on the land described in the deed from Stephen Hays to William H. Meyers, heretofore mentioned in this opinion. Mr. Standish soon found that he could more economically, and with better results, operate his precipitating plant by allowing the water to first percolate or flow into the shaft and then pump it into the tanks. In this manner, Mr. Standish operated his precipitating plant until 1928, when he conveyed his right in the water of Bingham creek, his precipitating plant, and his right in the land in controversy to the defendant. Since such conveyances were made to the defendant, he has continued to operate the precipitating plant in substantially the same manner as it was theretofore operated by Mr. Standish, excepting that some time prior to the commencement of this suit, the pipe line leading from Bingham creek to the shaft was partially destroyed by a flood since which time all of the water used by defendant has percolated through the surface soil into the shaft from which it is pumped into the precipitating tanks.

Plaintiff claims title to all of the copper in the water which percolates through the soil and into the shaft. Plaintiff makes such claim as the successor in title and interest of Stephen Hays, who in his deed to William H. Meyers, defendant's predecessor in title, reserved "all minerals on or in the land conveyed." Defendant's claim to the copper in the water is based upon his title to the surface of the land through which the water containing the copper solution percolates and upon his certificate of appropriation of .2 of a cubic foot per second of the waters of Bingham creek.

It was made to appear at the trial that samples of water taken from the shaft contained more copper in solution than samples of water taken from Bingham creek. It was also made to appear that Bingham creek serves as a sewer for the town of Bingham and that the water of that creek contains mud and sand while the water found in the shaft is comparatively clear. It is urged by plaintiff that these facts show that the water which percolates into the shaft does not come from Bingham creek. There is no evidence, and apparently no claim is made by plaintiff, that any of the copper in the water which percolates into the shaft has its origin in the land in controversy, or other lands owned by plaintiff. The evidence is all to the effect that the copper in solution in the water of Bingham creek comes from mining operations farther up the canyon. It is defendant's claim, and there is evidence to support the claim, that the water which percolates into the shaft comes from Bingham creek. It is further made to appear that the shaft where the water in litigation occurs does not go down to bedrock. The materials into which it was sunk consist of loose materials some of which were placed there in the course of constructing a road up Bingham Canyon. At the time the shaft was sunk, it was necessary to timber it to prevent it from caving in. The bottom of the canyon over which the creek flows is loose material. If the water is not pumped out of the shaft it moves down the canyon through the loose materials in the bottom thereof. There is considerable evidence touching the

construction of tunnels and shafts in the vicinity of the premises here in question, but we are unable to perceive how that evidence has any bearing upon the matter in hand. We shall therefore refrain from any further statement of such evidence.

It is urged by plaintiff that water containing copper in solution is a mineral and, as such, title to the water in the land conveyed to William H. Meyers by Stephen Hays was reserved by Mr. Hays, who later conveyed such water to plaintiff. No case is cited by plaintiff and we have been unable to find an adjudicated case holding that water is a mineral within the meaning of a reservation such as that contained in the deed from Hays to Meyers. The characteristics of water containing copper in solution are so unlike the characteristics of minerals that to say water is a mineral would be to extend the meanings of the word "mineral" beyond what is generally understood by that term. Our attention has not been called to a case which goes as far as appellant would have us go, but even though it should be conceded that water containing copper in solution is a mineral, still plaintiff's predecessor in title did not reserve the title thereto. So far as appears, there was no copper held in solution in any water which was in or upon the land in question at the time Hays conveyed the surface right thereof to Meyers. It will be observed that the reservation in the deed is of "minerals on or in the land conveyed." The water and the copper therein which defendant has used and which he claims the right to use were not "on or in the land conveyed" at the time of the conveyance. The water in dispute is constantly moving down the canyon. The water which defendant has used and is using came on or into the land conveyed long after the conveyance. To hold that the reservation contained in the deed extended to all copper held in solution in water that might at some future time be temporarily on or in the land conveyed would be to give to the language used in making the reservation an unwarranted meaning.

It has been said by eminent authority that "to suffer tailings to flow where they may, without obstructions to confine them, is equivalent to their abandonment. If they lodge on the land of another they are considered as an accretion, and belong to him." 2 Lindley on Mines (3d Ed. p. 1009, § 426. Each of the parties to this litigation claims that the other has failed to establish any title to the copper which has been and is being precipitated from the water which finds its way into the shaft. They invoke the doctrine that one must recover, if at all, on the strength of his own title and not on the weakness of the title of his adversary. The copper which is the subject-matter of this litigation comes from tailings which have been abandoned by mines farther up the canyon. Under the authority just cited, it follows that when the copper is precipitated upon the premises in question, it becomes the property of one or the other of the parties to this controversy. The question for determination is which of the parties has the superior title thereto. No case has been called to our attention and we have been unable to find an adjudicated case involving facts comparable to those here presented unless it be the case of *Utah Copper Co.* v. *Montana-Bingham Consol. Mining Co.*, 69 Utah 423, 255 P. 672, which is cited and relied on by both parties in support of their respective claims. In that case the Utah copper company had obtained from the defendant and from others a perpetual grant or lease to dump ore, rock, earth, and other materials on the surface of a portion of defendant's mining claim, and on the mining claims of others located in the district. By the terms of the grant, plaintiff was given the right to remove the dump at any time. Defendant retained to himself the title to all ores underneath the surface and the right to remove the same. Pursuant to the agreement, plaintiff dumped a large quantity of material on defendant's premises. In the course of time, water from rain and snow which fell on the dump took copper in solution. A substantial profit could be derived from precipitating the copper so taken in solu-

tion. In order to secure such copper, plaintiff sought to condemn a right of way and easement over defendant's premises for the purpose of excavating a tunnel and laying a pipe line so that the water containing copper in solution could be conveyed to plaintiff's precipitating plant and there the copper extracted for plaintiff's use and benefit. The face of plaintiff's proposed tunnel was to extend to the lower part of the dump with two open trenches running at right angles with the face of the tunnel. The trenches were to be constructed for the purpose of collecting the water at the bottom of the dump and then convey it through the pipe line to plaintiff's precipitating plant. The dump was on bedrock. Plaintiff prevailed in both the trial court and this court. One of the issues raised by the pleadings in that case was the ewnership of the copper in solution. In the opinion of this court, it was held that so long as the water containing copper in solution was in the dump, such solution belonged to the plaintiff and that plaintiff had the right to collect and remove the same in the manner sought. It will be noted that the facts in the cited case differ in a number of particulars from the facts of the case in hand. The former case, however, is authority for the doctrine that copper in solution in water percolating through soil belongs to the owner of the soil so long as it is in the soil. In this case there is evidence tending to show that the water which finds its way into the shaft is not strictly speaking percolating water, but is a part of Bingham creek within the doctrine announced in such cases as *City of Los Angeles* v. *Hunter* 156 Cal. 603, 105 P. 755, and *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597, 57 P. 585, wherein it is held that water flowing through gravel, sand, and debris forming the bottom of a flowing stream is a part of the stream which flows over the surface of the ground. The court, below adopted the doctrine that the water in dispute is a part of Bingham creek and, as such, defendant is entitled to the use thereof to the extent of .2 of a cubic foot per second. We quote the following from the findings:

"That said two-tenths of a cubic foot of water per second was appropriated on April 12, 1923, for the purpose of extracting copper therefrom, and under and by virtue of said appropriation, duly allowed and approved by the State of Utah on July 13th, 1925, the defendant, his grantor and predecessors in interest have used, claimed the right to use, and are still using said waters from January 1st to December 31st of each year.

"That said water from said creek so appropriated and used as aforesaid, have been and until approximately one year next before the commencement of this action, was conveyed to said premises by means of pipes, flumes, and natural flow, and there stored in excavations made thereon on the surface of said premises, and thence caused to flow through it on tin, and other metal scrap, and that by that method, the copper in solution in said water is precipitated and recovered therefrom; that the product therefrom is of value to defendant and during all times herein mentioned the defendant and his predecessors in interest have put said water, so appropriated as aforesaid, to a beneficial use.

"That the said Bingham Canyon Creek is, and during all times herein mentioned was, a natural stream of water flowing down a precipitous canyon in a northerly and northeasterly direction in a narrow channel between precipitous banks formed by high mountains, the bed of which stream has been filled for a depth of several feet with gravel, sand and debris through which a part of the waters thereof flow, but that all of the waters of said stream, whether above, or contained within said gravel, sand and debris, flow down said stream or natural water course and are a part thereof, and are not a part of the property of the said plaintiff or of any other person except as they have been appropriated and used as required and directed by the laws of the State of Utah.

"That the said plaintiff has made no appropriation or use of the said Bingham Canyon Creek and has no interest in or title to such waters bearing and containing minerals in solution, which flow in said stream."

The findings quoted are supported by the evidence.

The topography of the territory in the vicinity of the shaft is such that one would expect some of the water from Bingham creek to seep into the shaft. Indeed, in view of the nearness of the shaft to the creek, the fact that a drift extends from the bottom of the shaft under the ▐ creek, and the further fact that the bed of the creek

to a depth at least equal to that of the shaft consists of rock, sand, and other loose materials, the conclusion is unavoidable that water from the creek proper finds its way into the shaft. Moreover the evidence fails to disclose any other source of such water. It may well be that some of the water which finds its way into the shaft moves through the surface soil from somewwhere above and beyond the premises here involved. Such fact, however, does not, under the law announced in the case of *Utah Copper Co.* v. *Montana-Bingham Consol. Mining Co.*, supra, vest title to such water in the plaintiff. The law is well settled that when a surface right is conveyed apart from the minerals, "two separate estates exist, each of which is distinct from the other, and both of which are mutually dominant and servient. * * * The owner of each estate has the right to exercise with respect thereto all the incidents of ownership in the same manner as over other property he may possess, subject only to such rights or servitudes as exist in favor of the other owner." 46 C. J. 981, 982, and cases there cited. Applying the law as taught by the adjudicated cases, it may be said, generally, that a conveyance of a surface right in a tract of land with a reservation of the minerals vests in the grantee such rights to the use thereof as are usually exercised by owner in fee subject only to the right of the grantor to remove the minerals reserved. It may not be said that defendant was without right in and to the materials into which the shaft was sunk. A surface right is not confined to the geometrical surface. The owner of the surface has an absolute right in the absence of an agreement to the contrary to the necessary support of his land. He may cultivate the surface or erect buildings thereon as suits his fancy. Should the owner of a surface right choose to drain his land to make it fit for agricultural purposes, we can perceive of no good reason why he may not do so, and at the same time sell or use the water so drained. Should he desire a basement under his building, doubtless he would have a right to excavate the same, and if water percolated into the basement

so constructed, we know of no law that would prevent him from pumping such water out of the basement and using the same. In short, the owner of a surface right may improve and use the surface as he sees fit so long as he does not interfere with the rights of those who own the minerals. So far as is made to appear, the sinking of a shaft to a depth of 16 feet in the loose non-mineral materials in no way interfered with any present or prospective mining operations of the plaintiff. Nor did the sinking of such shaft injure or remove any minerals reserved by plaintiff's grantor. No claim is made that the mineral rights reserved by plaintiff's grantor were impaired by permitting the water with copper in solution to percolate through the surface soil. Plaintiff's mineral rights are in no way affected by the water in dispute whether it is conveyed to the shaft through a pipe line or is permitted to percolate through the surface soil. When the water is collected in the shaft it is in the possession of the defendant without regard to whether it is diverted from Bingham creek through a pipe line or percolates through the surface soil. The manner in which defendant operates his precipitating plant is essentially a surface operation.

The decree quieting in defendant the title to .2 of a cubic foot per second of the water containing copper in solution which at the time of the trial and prior thereto was being and had been used by defendant and his predecessor is supported by the evidence. Such title of defendant, however, does not extend to any water that may be encountered by the plaintiff in conducting mining operations for the extraction of minerals reserved by plaintiff's grantor. That part of the decree which provides that plaintiff and all persons claiming under it are forever barred from any and all claims of right and title to the premises is reversed; otherwise the decree is affirmed.

This cause is remanded to the district court of Salt Lake county with directions to amend the decree to conform to the views herein expressed. No costs are allowed either party on this appeal.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.